```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/1/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLINT ARTHUR,

                      Plaintiff,

-against-

ORCHESTRATE BUSINESS LLC, et al.,

                      Defendants.

24-CV-02985 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Clint Arthur, an individual entrepreneur who offers consulting services on how to land television appearances, brought this action against Defendants Orchestrate Business LLC and Raffi Andonian, seeking lost revenue, damages, and injunctive relief. Arthur primarily alleges that Defendants misappropriated Arthur's proprietary business information in order to solicit his customers to pay for similar services offered by Defendants. Defendants moved to dismiss the First Amended Complaint for lack of personal jurisdiction and failure to state a claim under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, the Court GRANTS the motion to dismiss for lack of personal jurisdiction.

## FACTS & PROCEDURAL BACKGROUND[1]

Plaintiff Clint Arthur coaches businesses and individuals on securing television appearances and leveraging those appearances into business opportunities. Dkt. No. 12 ("First

---

[1] These facts are drawn from the First Amended Complaint, materials appended to the First Amended Complaint, and materials submitted by the parties in connection with Defendants' motion to dismiss.

The Court shall refer to the parties' memoranda of law in support of and opposition to Defendants' motion to dismiss as follows: Dkt. No. 25 ("Mot."); Dkt. No. 28 ("Opp."); Dkt. No. 30 ("Reply"); Dkt. No. 31 ("Supp. Opp.").

Amended Complaint" or "FAC") ¶ 12.  Among other things, Arthur offers seminars where attendees learn "confidential secrets and best practices," including his "Mathematical Formula for Getting on TV," which draws on Arthur's own experience in the television industry.  *See id.* ¶¶ 14–15 & Ex. A ("Arthur Decl.") ¶ 10.

Defendant Raffi Andonian, a citizen of Missouri, is the sole partner and owner of Defendant Orchestrate Business LLC ("Orchestrate Business"), an LLC organized under the laws of Missouri with a principal place of business in Saint Louis, Missouri, which offers similar consulting services to those offered by Plaintiff.  *See* FAC ¶¶ 7–8, 13.  From August 2020 through October 2023, in Las Vegas, Nevada, and Acapulco, Mexico, Andonian attended four seminars hosted by Arthur, over the course of which Andonian and Arthur developed a professional relationship.  *See id.* ¶ 18; Arthur Decl. ¶¶ 4, 6.  At each seminar, Andonian signed an agreement (the "Seminar Agreement"), under which Andonian agreed not to use resources provided or concepts taught at the seminar to "compete" with Arthur or his business.  *See* FAC ¶¶ 16–17, 20; Arthur Decl. ¶ 5.  At some point after attending these seminars, Andonian asked Arthur for permission to use information taught by Arthur to launch his own business.  *See* FAC ¶ 21; Arthur Decl. ¶ 7.  Although Arthur denied Andonian's request, Andonian still allegedly used the information he learned from Arthur in seminars offered by Orchestrate Business.  *See* FAC ¶¶ 22–24.

Defendants' website, www.tvseminar.tv, advertises a syllabus for a training program, which Arthur alleges borrows heavily from or outright copies the techniques Arthur has developed over the years to train his clients for television appearances.  *See id.* ¶ 24; Arthur Decl. ¶¶ 8–11; *see also* FAC Ex. B (screenshots of Defendants' website).  Interested clients may sign up for seminars offered by Defendants using the "RSVP" button on the website.  *See* FAC Ex. B.

Defendant Andonian also manages a personal social media account, which he uses to post, among other things, advertisements that appear to be related to Orchestrate Business. *See* Opp. Ex. A.

Arthur alleges that several prospective clients have been solicited by Defendants—specifically, Arthur alleges that Andonian has reached out to Arthur's prospective clients and encouraged them to purchase seminars offered by Orchestrate Business instead of Arthur's seminars. *See* FAC ¶¶ 25–26; Arthur Decl. ¶¶ 12–16. One such client was William Belfar, who previously attended several of Arthur's seminars and attended weekly private coaching sessions with Arthur. Supp. Opp. Ex. B. ("Belfar Decl.") ¶¶ 4–6. Belfar is a New York citizen, who purchased and attended a seminar offered by Andonian in St. Louis, Missouri on April 26–28, 2024. *Id.* ¶¶ 1–3. Since attending Andonian's seminar, Belfar has not attended any other seminars offered by Arthur. *Id.* ¶¶ 13–14.

On April 19, 2024, Arthur filed the Complaint in this action, asserting state law causes of action, including breach of contract, tortious interference with a business relationship, and unfair competition. *See* Dkt. No. 1. On April 23, 2024, the Court ordered Arthur to file an amended complaint in order to correct the Complaint's deficient allegations regarding complete diversity of citizenship. *See* Dkt. No. 9. On May 17, 2024, Arthur filed the First Amended Complaint. On June 21, 2024, Defendants moved to dismiss the First Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6). Dkt. No. 24. Several months after Defendants' motion to dismiss was fully briefed, on September 17, 2024, Arthur simultaneously filed a supplemental memorandum of law and other materials in further opposition to the motion to dismiss for lack of personal jurisdiction, and moved for leave to file such materials. *See* Dkt. No. 31-1 & Supp. Opp.

## DISCUSSION

Defendants argue that the First Amended Complaint should be dismissed because (1) Arthur has failed to establish that this Court may exercise personal jurisdiction over Defendants; and (2) Arthur has failed to sufficiently plead any of his claims for various reasons, including because the restrictive covenant in the Seminar Agreement is categorically unenforceable and facially invalid. Defendants also argue that the Court should deny any request to further amend the First Amended Complaint because such an amendment would be futile.

The Court starts, as it must, with personal jurisdiction. *See Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 14 (S.D.N.Y. 2022); *N. Fork Partners Inv. Holdings, LLC v. Bracken*, No. 20-CV-02444 (LJL), 2020 WL 6899486, at *4 (S.D.N.Y. 2020). Because the Court does not have personal jurisdiction over Defendants, there is no need to reach Defendants' other stated grounds for dismissal.

### I.    MOTION FOR LEAVE TO FILE SUPPLEMENTAL OPPOSITION

As a threshold matter, Arthur's motion for leave to file his supplemental opposition to the motion to dismiss is granted, and the Court will consider both Arthur's supplemental opposition and the materials appended thereto.

"Supplemental filings on motions fully submitted require leave of court." *AA Med. P.C. v. Almansoori*, No. 20-CV-03852 (DG) (JMW), 2023 WL 4073772, at *2 (E.D.N.Y. June 19, 2023) (citing *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)). Generally, courts in this Circuit look "favorably on efforts to supplement the record absent prejudice or bad faith." *SL-x IP S.Á.R.L. v. Bank of Am. Corp.*, No. 18-CV-10179 (RJS), 2019 WL 8362064, at *1 (S.D.N.Y. Feb. 16, 2019). "Moreover, a district court is encouraged to give a plaintiff 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction where

necessary.'" *Id.* (quoting *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017)); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.") (internal marks omitted) (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)). A "district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU*, 343 F.3d at 627 (internal marks omitted) (quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). "Cases in which courts have authorized parties to supplement the record . . . have generally involved parties who have come to the court with actual supplemental information in hand." *Katz v. Metropolitan Trans. Auth.*, No. 17-CV-00472 (KAM), 2017 WL 6734185, at *12 (E.D.N.Y. Dec. 29, 2017).

Here, Arthur's supplemental opposition and supporting materials solely relate to Belfar's purported transactions with Defendants' business, which are relevant to the disputed jurisdictional facts in this action, were disclosed during the course of discovery, and were unknown to Arthur at the time of the filing of his original opposition. *See* Supp. Opp. at 1. Accordingly, absent any showing of prejudice or bad faith, and given that Defendants have not opposed Arthur's request, the Court has considered the additional materials submitted by Arthur in assessing whether Arthur has sufficiently alleged personal jurisdiction over Defendants.

## II. RULE 12(B)(2) MOTION TO DISMISS

### A. Legal Standard

"To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant." *Kamal v. Pressler, Felt & Warshaw, LLP*, No. 23-CV-10487 (MKV), 2025 WL 919505, at *4 (S.D.N.Y. Mar. 25, 2025) (citing *Penachio v.*

5

*Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012)). "To make a *prima facie* showing of personal jurisdiction, a plaintiff 'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)).

In assessing whether a plaintiff has made a sufficient *prima facie* showing, the Court must "construe the pleadings and any supporting materials in the light most favorable" to the plaintiff, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013), and resolve all doubts in his favor, *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131 (2d Cir. 2022). The Court may consider materials outside the pleadings when making this assessment. *See Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276 (2d Cir. 2024). However, the Court cannot "draw argumentative inferences in the plaintiff's favor" and need not accept conclusory legal statements. *O'Neill v. Asat Trust Reg.*, 714 F.3d 659, 673 (2d Cir. 2013).

There are three traditional bases for the exercise of personal jurisdiction over a defendant. First, a court may exercise general jurisdiction over a defendant that is "essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). Second, a court may exercise "specific or conduct-linked jurisdiction" where there is a sufficient link between the defendant's conduct in the forum and the conduct at issue in the case. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Third, a defendant can consent to the exercise of personal jurisdiction. *Rabinowitz v. Kelman*, 75 F.4th 73, 83 (2d Cir. 2023); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). In all cases, the exercise of personal jurisdiction must comport with fundamental notions of due process. *See Daimler*, 571 U.S. at 117.

Here, Defendants have not consented to the exercise of personal jurisdiction, so the Court must analyze whether Arthur has sufficiently established that the Court has either general or specific personal jurisdiction over Defendants. To determine whether the Court has general or specific personal jurisdiction over Defendants, "[i]n the absence of a federal statute specifically directing otherwise, . . . [the Court] look[s] to the law of the forum state to determine whether a federal district court has personal jurisdiction," which, here, is New York law. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016).

### B.  Discussion

Even considering Arthur's supplemental submission, Arthur has not made a sufficient *prima facie* showing that Defendants are subject to either general or specific personal jurisdiction in New York.

#### 1.  Arthur Fails to Establish General Jurisdiction

General personal jurisdiction subjects a defendant to suit on all claims. *See Daimler*, 571 U.S. at 127. In New York, courts exercise general jurisdiction pursuant to New York Civil Practice Law and Rules ("CPLR") § 301. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler*, 571 U.S. at 137. For a foreign corporate entity, the entity must be "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Trisura Ins. Co. v. Bighorn Constr. and Reclamation, LLC*, No. 23-CV-11053 (GHW), 2025 WL 1531676, at *5 (S.D.N.Y. May 28, 2025) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)). Courts have exercised general personal jurisdiction over a limited liability company where the company has been organized under the laws of the forum state or maintains its principal place of business in the forum state. *See, e.g., McLaughlin v. Onanfe Mgmt. Solutions LLC*, No. 22-CV-06792 (PKC) (MMH), 2024 WL 4184485, at *5 (E.D.N.Y. Sept. 14, 2024); *cf.*

7

*Trisura Ins. Co.*, 2025 WL 1531676, at *6 (declining to exercise general jurisdiction over a Texas LLC where the company did not conduct any operations, engage in any marketing activities, or maintain any real property or accounts in New York, and none of its members, officers, directors, or employees were in New York).  A corporate entity's domiciles are the "paradigm bases" for a forum's authority over a non-resident entity, and a corporate entity can only become subject to the personal jurisdiction of an additional forum if the entity's contacts with the forum state are "so continuous and systematic as to render [it] essentially at home." *See Daimler*, 571 U.S. at 138–39 & n.19 (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924.

Here, neither defendant is domiciled in New York for purposes of general personal jurisdiction.  Arthur affirmatively alleges that both Defendants are citizens of Missouri, and the only asserted basis for personal jurisdiction over Defendants is under CPLR § 302, not § 301.  *See* FAC ¶¶ 6–8.  Moreover, for the reasons discussed *infra*, Arthur has not sufficiently shown that this is an "exceptional case" in which Orchestrate Business' contacts with New York are "so continuous and systematic as to render [it] essentially at home" in this jurisdiction.  *See Daimler*, 571 U.S. at 139 n.19.  Accordingly, the Court finds that it cannot exercise general personal jurisdiction over Defendants.

### 2. Arthur Fails to Establish Specific Jurisdiction

Even where general jurisdiction is lacking, a court may have specific jurisdiction "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *In re Platinum and Palladium Antitr. Litig.*, 61 F.4th 242, 269 (2d Cir. 2023).  Under CPLR § 302(a), New York's long-arm statute, a court may exercise specific jurisdiction over a non-domiciliary

defendant where the claim asserted against the defendant arises out of particular acts, including (1) transacting business within New York or contracting anywhere to supply goods or services in New York; (2) committing a tortious act in New York; or (3) committing a tortious act without the state, which causes injury to a person or property in New York. *See* CPLR § 302(a); *Forstech Tech. Nigeria Ltd. v. Shell Petroleum Dev. Co. of Nigeria Ltd. (SPDC)*, No. 24-CV-07629 (PAE), 2025 WL 1435203, at *4 (S.D.N.Y. May 19, 2025); *Kamal*, 2025 WL 919505, at *7.

The totality of the circumstances and the quality of the defendant's contacts with the forum are both relevant to establishing specific personal jurisdiction. *Forstech Tech. Nigeria Ltd.*, 2025 WL 1435203, at *4. The inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State. . . . [The Supreme Court has] consistently rejected attempts to satisfy the defendant-focused minimum contacts inquiry by demonstrating contacts between . . . third parties[] and the forum State." *Id.* (emphasis in original) (internal references omitted).

Here, in the First Amended Complaint, Arthur alleges that Defendants "do substantial business in the State of New York and committed the unlawful acts giving rise to this claim within the State of New York." FAC ¶ 11. In his oppositions to Defendants' motion to dismiss, Arthur argues that Defendants have both transacted business and committed a tortious act against him in New York to sufficiently establish personal jurisdiction, and there is "a reasonable probability that [their] website has been used to affect commercial transactions with customers in New York" sufficient to satisfy the minimum contacts inquiry. *See* Opp. at 19–21; Supp. Opp. at

9

2. While the Court must construe the allegations in the First Amended Complaint in the light most favorable to Arthur, even under this lenient standard Arthur has not made a *prima facie* showing that Defendants purposefully transacted business or committed a tortious act in New York.

i. **Defendants Did Not Transact Business in New York**

With respect to a defendant's business transactions in New York, "[CPLR §] 302 is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction at the claim asserted." *Am. Girl*, 118 F.4th at 276 (internal references omitted) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)). "The quality of a defendant's New York contacts is the 'primary consideration' in deciding whether the defendant transacted business in New York." *Green Earth Enter., LLC v. Sana Benefits, Inc.*, No. 24-CV-01852 (MMG), 2025 WL 1425325, at *2 (S.D.N.Y. May 16, 2025) (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)).

A defendant may, "through [a] website, 'purposefully avail[] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). Whether a defendant's website transacts business in New York depends on the website's "degree of interactivity." *Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 WL 846896, at *4 (S.D.N.Y. Mar. 22, 2022); *see also Best Van Lines, Inc.*, 490 F.3d at 252. On a "sliding scale of interactivity," courts determine whether the internet activity at issue occurred on a "passive" website, which "merely ma[d]e information available to interested visitors," or an "interactive" website, "through which a defendant clearly 'does

10

business over the internet.'" *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 763 F. Supp. 3d 618, 633 (S.D.N.Y. 2025). "Fully interactive websites, which are used to purposefully sell goods or services in New York . . . can be sufficient to trigger jurisdiction under § 302(a)(1) where the cause of action arises out of such purposeful activity." *Id.* (internal references omitted). However, a highly interactive website alone is insufficient to support the exercise of specific personal jurisdiction—in order to support the exercise of personal jurisdiction, a defendant must have used the website to purposely avail itself of the forum state. *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 15 (S.D.N.Y. 2022).

Here, Arthur has failed to sufficiently allege or show that Defendants have purposefully transacted or solicited business within New York. Neither Defendants' website nor the various social media posts depicting Defendants in connection with New York-related landmarks and New York Life Insurance, individually or in the aggregate, are sufficient to support the exercise of specific personal jurisdiction.

With respect to the website, Arthur argues that Defendants' website was "available to those residing within . . . New York," and potential customers could seek Defendants' services by selecting the "RSVP" button on the website and inputting user-specific information, and thereafter, receive an invoice for Defendants' services. *See* Opp. at 20–21. To start, counsel's unsworn and unsubstantiated statements in Arthur's opposition are not cognizable evidence for purposes of establishing whether this Court has personal jurisdiction over Defendants. *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence.").[2]

---

[2] Defendants argue that counsel's assertions about how potential customers sought out Defendants' services using their website are "speculati[ve]," Reply at 10, but fail to specifically rebut or controvert counsel's representations with specific averments or evidence refuting jurisdiction.

11

Even taking as true the representations in Arthur's opposition regarding Defendants' website, Arthur has not sufficiently shown that Defendants purposefully solicited New York customers through their website or actually transmitted their services to New York. On its face, Defendants' website does appear interactive and commercial in nature, given that the website features Defendants' paid services and encourages interested consumers to "RSVP." *Cf. A.W.L.I. Grp, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 568–69 (E.D.N.Y. 2011) (finding the defendant's website was passive where customers could not transact for the defendant's services and the defendant did not purposefully solicit New York customers and its website was not in any way targeted towards New York). However, the interactive or commercial nature of Defendants' website or the availability of Defendants' website to users in New York is, by itself, insufficient to support the exercise of personal jurisdiction, given that Arthur has not shown that Defendants in fact used their website to purposefully avail themselves of the privilege of conducting activities within New York. *See Romero*, 580 F. Supp. 3d at 15; *Creative Photographers, Inc.*, 763 F. Supp. 3d at 633 ("[T]he mere availability of [a] [web]site to users in New York, standing alone, does not amount to transacting business in the state for purposes of [CPLR §] 302(a).").

While Defendants need not have offered their seminars in New York or have been physically present in New York to transact business here within the meaning of § 302(a)(1), in order to trigger this Court's personal jurisdiction, Defendants must have engaged in "purposeful activities" or "volitional acts" through which they "availed [themselves] of the privilege of conducting activities" within New York, "thus invoking the benefits and protections of its laws." *Chloe*, 616 F.3d at 169 (internal references omitted); *see also Fischbarg*, 9 N.Y.3d at 380 ("Not all purposeful activity, however, constitutes a transaction of business within the meaning of

CPLR 302(a)(1).") (collecting cases). Nothing in the First Amended Complaint or anything submitted by Arthur in connection with his opposition sufficiently alleges or shows that Defendants purposefully conducted business activity in New York using their website. Belfar's declaration does not suggest that his purchase of Defendants' services was caused by or in any way connected to any efforts *by Defendants*, through the use of their website or other means, to target or solicit Belfar or New York customers generally. *Cf. Chloe*, 616 F.3d at 166 (finding sufficient record evidence that the defendant operated a website to offer products for sale to New York consumers, permitted consumers to purchase such products, and facilitated the shipment of products into New York).

In their responses to interrogatories, Defendants represent that no sales are transacted through websites under their control. *See* Postolski Decl. Ex. A. Similarly, in his Declaration, Belfar does *not* represent that he used Defendants' website to purchase access to the April 2024 seminar—which was held in Missouri, not New York—or when or how he completed his purchase.[3] Belfar simply states that he "paid [$3,300] to attend Raffi Andonian's [TV Seminar] in St. Louis, Missouri on April 26, 27, and 28, 2024," and that he had to travel from his home in New York to do so. Belfar Decl. ¶¶ 2–3. Although Arthur asserts that Defendants offer other

---

[3] Personal jurisdiction must be ascertained as of the date this action was commenced. *See Prince v. Intercept*, 634 F. Supp. 3d 114, 128 (S.D.N.Y. 2022) ("Personal jurisdiction is determined at the time of service of the summons and complaint."); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569–70 (2d Cir. 1996) ("In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed—to assess whether they satisfy the 'continuous and systematic' standard.") (internal footnote omitted). Here, Arthur filed this action on April 19, 2024, *see* Dkt. No. 1, and Defendants sent waivers of service on April 22, 2024, *see* Dkt. Nos. 10 & 11. Because Belfar does not specify when he purchased access to the April 2024 seminar, which began on April 26, 2024, it is possible that, even assuming his transaction would otherwise sufficiently trigger personal jurisdiction over Defendants, his purchase occurred after this action was filed and the summons and Complaint were served on Defendants, and therefore would not be a transaction sufficient to invoke this Court's personal jurisdiction over Defendants.

services on their website, such as daily "office hours" or opportunities to consult by phone or e-mail, *see* Arthur Decl. Ex. B, there is no evidence that Belfar or any other New York resident used these services or that Defendants made any effort to solicit or target New York residents for these services. While § 302 is a "single act statute" and "proof of one transaction in New York [can be] sufficient to invoke jurisdiction," *Am. Girl*, 118 F.4th at 276 (internal references omitted), even viewing Belfar's Declaration in the light most favorable to Arthur, the nature of Belfar's transaction is an insufficient *prima facie* showing that Defendants purposefully transacted business in New York. *See Green Earth Enter., LLC*, 2025 WL 1425325, at *2; *see, e.g., Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 421–22 (S.D.N.Y. 2009) (finding the defendants' sales to New York companies were insufficient to invoke personal jurisdiction where the defendant solicited national corporate customers and did not specifically target New York audiences or users).

Moreover, Arthur has not sufficiently shown that there is "an articulable nexus, or a substantial relationship, between the claim[s] asserted and the action that occurred in New York." *See Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 802 (S.D.N.Y. 2015) (quoting *Best Van Lines*, 490 F.3d at 246). The fact that Defendants' website could have been used by a New York resident, like Belfar, to access Defendants' services is incidental to the gravity and core elements of Arthur's breach of contract and other state law claims, which appear to lie in Missouri (where Defendants' held the April 2024 seminar and other events) or elsewhere (like Nevada or Mexico, where Arthur held the seminars that Andonian attended). *See, e.g., id.* ("[T]he fact that contracts signed in New York served as 'a link in the chain of causation leading to plaintiff's claims' is not itself sufficient for purposes of section 302(a)(1).") (quoting *Faherty v. Fender*, 572 F. Supp. 142, 147 (S.D.N.Y. 1983)); *Fischbarg*, 9 N.Y.3d at 380 ("[W]e have

held that 'merely telephon[ing] a single order' to New York requesting a shipment of goods to another state . . . do[es] not support CPLR 302(a)(1) jurisdiction.") (citing *Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 17 (1970)).

Similarly, the various social media posts depicting Defendants in connection with New York-related landmarks and New York Life Insurance do not demonstrate that Defendants were purposefully selling their services in New York. *See* Opp. Ex. A; *see also* Postolski Decl. Ex. A (Andonian indicating that Arthur coordinated the NASDAQ billboard feature of Defendants' business in Times Square). To the extent these posts constitute advertisements for Defendants' services, "[a]dvertisements are [only] sufficient to show that the defendant conduct[ed] business in the forum state 'if the advertisements are supplemented by business transactions occurring in the state . . . or [are] accompanied by a fair measure of the defendant's permanence and continuity in New York which establishes a New York presence.'" *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 126 (S.D.N.Y. 2021) (emphasis omitted) (quoting *Virgin Enters. Ltd. v. Virgin Eyes LAC*, No. 08-CV-08564 (LAP), 2009 WL 3241529, at *4 (S.D.N.Y. Sept. 30, 2009)). In light of the limited nature and quality of Belfar's single transaction to attend Defendants' seminar in Missouri, as described above, Defendants' social media posts, either individually or together with the representations in the Belfar Declaration and First Amended Complaint, do not support a *prima facie* showing that Defendants had a sufficiently fair measure of permanence and continuity in New York to trigger this Court's personal jurisdiction. *See, e.g., A.W.L.I. Grp., Inc.*, 828 F. Supp. 2d at 566 (finding that the defendant's online advertising, even if directed at New York residents, was insufficient to establish personal jurisdiction where the plaintiff did not allege "any other facts from which the Court can infer that the [d]efendant purposefully availed itself of the privilege of conducting business in New York"). Moreover,

Arthur has, again, not even attempted to articulate any nexus or substantial relationship between the social media posts and the claims asserted in the First Amended Complaint.

Accordingly, Arthur has not sufficiently demonstrated that Defendants transacted business in New York to subject them to this Court's specific personal jurisdiction.

### ii.  Defendants Did Not Commit a Tortious Act Within New York

Finally, CPLR § 302(a)(2) authorizes the Court to exercise personal jurisdiction over a non-domiciliary who "commits a tortious act within the state." CPLR § 302(a)(2). This provision "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997).

In his opposition, Arthur argues that "Defendants have both transacted within the state and committed a tortious act against [him] within the State of New York[,]" but fails to articulate how Defendants committed any purported tortious act in New York. *See* Opp. at 19. In the First Amended Complaint, Arthur alleges no facts that support a finding that a tortious act was committed in New York, *see* FAC ¶ 11—as discussed above, Andonian attended Arthur's seminars and signed the Seminar Agreement in Nevada and Mexico, and Andonian's own seminars were hosted in Missouri. Andonian taking some photographs in New York that were later used in social media posts advertising his business does not qualify as a "tortious act" sufficient to fall within Section 302(a)(2), and Arthur does not articulate any basis on which it could.

Accordingly, Arthur has not demonstrated that Defendants committed a tort in New York sufficient to invoke this Court's specific personal jurisdiction.[4]

---

[4] Under CPLR § 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to [a] person . . . within the state[.]" CPLR §

* * * *

Because the Court concludes that it lacks a lawful basis to exercise personal jurisdiction over Defendants, the Court need not consider any of the other grounds raised by Defendants for dismissal of this action. *See, e.g., Creative Photographers, Inc.*, 763 F. Supp. 3d at 630; *Marcus v. Archer*, No. 19-CV-07099 (JPO), 2020 WL 4937353, at *2 (S.D.N.Y. Aug. 24, 2020).

Furthermore, the Court denies Arthur leave to amend because repleading in this District cannot cure this substantive jurisdictional defect, and thus, any amendment would be futile. *See, e.g., Smith v. United States*, 554 F. App'x 30, 32 (2d. Cir. 2013); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[A] futile request to replead should be denied."). Nothing in this Opinion bars Arthur from re-filing his claims in a court that can exercise personal jurisdiction over Defendants, if he chooses.

## CONCLUSION

For the foregoing reasons, the motion to dismiss under Rule 12(b)(2) is GRANTED. The Clerk of Court is respectfully directed to terminate Dkt. No. 24 and CLOSE this case.

Dated: August 1, 2025
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

---

302(a)(3). Here, Arthur does not assert or argue that Defendants committed a tortious act outside of New York, which caused him injury within New York. Accordingly, the Court does not analyze or determine whether Defendants are subject to personal jurisdiction under § 302(a)(3). *See United States v. Lawrence*, 553 F. Supp. 3d 131, 134 n.1 (S.D.N.Y. 2021) ("Courts need not entertain an argument that was not briefed.") (internal references omitted); *Hudson v. Cnty. of Dutchess*, 51 F. Supp. 3d 357, 378 (S.D.N.Y. 2014).